```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS
```

**BRIAN MICHAEL WATERMAN,**

                        **Plaintiff,**

           **v.**                                            **CASE NO. 19-3237-SAC**

**JACOB CONARD, et al.,**

                        **Defendants.**

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiff's second amended complaint (Doc. 46) and on his motion to fix the law library (Doc. 42), motion to stay proceedings (Doc. 47), motion for protection from abuse by the undersigned (Doc. 49), motion for writ of mandamus (Doc. 50), and motion to continue pleadings (Doc. 51).

The court enters the present order to address the pending motions and to identify four defendants who are subject to dismissal from this action. Plaintiff is directed to show cause why those defendants should not be dismissed from this action.

### Nature of the complaint

The second amended complaint presents eight claims for relief and names 17 defendants: (1) Jacob Conard, a prosecutor in Columbus, Kansas; (2) Hope Brittain, a prosecutor's assistant in Columbus, Kansas; (3) Forrest Lowry, an attorney in private practice in Ottawa, Kansas; (4) Sara Beezley, an attorney in private practice in Girard, Kansas; (5) Oliver Kent Lynch, a state district judge in Columbus, Kansas,; (6) Stanton Hazlett, the former Kansas attorney disciplinary administrator; (7) Sharon Baird, an assistant disciplinary administrator; (8) Kansas

Attorney General Derek Schmidt; (9) the State of Kansas; (10) Captain (fnu) Scott, of Wichita, Kansas; (11) Sgt. (fnu) Torres, of Wichita, Kansas; (12) LaDell Turley, a court reporter, of Columbus, Kansas; (13) Capt. Michelle Tippie, of Columbus, Kansas; (14) Frederick Smith, an attorney in Pittsburg, Kansas; (15) Robert Fleming, a state district judge in Columbus, Kansas; (16) Nathan Coleman, a prosecutor in Columbus, Kansas; and (17) James Campbell, an attorney in Burlington, Kansas.

In Count 1, plaintiff claims his First Amendment right of access to the court was violated when defendant Turley altered court minutes in September 2018 and April 2019. He claims this was done at the direction of defendant Conard and/or defendant Lynch and was intended to make it appear that defendant Lowry did not switch sides and advocate for defendant Conard. He states that defendant Turley changed questions and answers and omitted other questions.

In Count 2, plaintiff claims violations of the Sixth Amendment, the attorney-client privilege, and state statutes, alleging that defendant Lowry, after terminating his attorney-client relationship with plaintiff, gave his defense file to defendants Conard, Coleman, and Brittain, and conspired with defendants Conard and Lynch to purposely expose materials related to the plaintiff's defense.

In Count 3, plaintiff claims violations of the Sixth and Fourteenth Amendments occurred when defendant Conard accepted the defense file from defendant Lowry. He claims defendants Conard and Brittain then searched through the file and conspired with Sheriff Groves, defendant Tippie and a County Commissioner to

steal DVDs related to two other civil rights actions brought by plaintiff and pending in the District of Kansas.

In Count 4, plaintiff claims violations of the Sixth Amendment and the attorney-client relationship by defendant Beezley, alleging she conspired with defendants Lynch and Conard to deprive plaintiff of his constitutional rights. He also claims that on April 9, 2019, she withheld exculpatory evidence and testimony to aid the state prosecutor in concealing his misconduct of reading through confidential materials in the defense case file.

In Count 5, plaintiff claims violations of the Fifth and Sixth Amendments. He appears to challenge an April 2019 ruling by defendant Lynch that it is legal for prosecutors to receive and inventory attorney-client case files and log the contents. He claims that defendant Schmidt has been notified of this practice but has taken no action to investigate it.

In Count 6, plaintiff claims violations of the Fifth and Sixth Amendments "due to being placed in segregation at least 50 times" without his legal work. He claims this is done to allow defendant Tippie to go through his legal work and copy his letters. He also claims that in December 2019, defendant Coleman had defendants Scott and Torres illegally seize and search his attorney-client file.

In Count 7, plaintiff claims violations of the First and Fourteenth Amendments. He states that he filed a complaint with defendant Baird alleging attorney misconduct by defendants Lowry, Beezley, and Conard. He states that defendant Baird refused the complaints, and he claims that defendants Baird and Hazlett have

denied him access to the courts.

In Count 8, plaintiff claims a violation of the Sixth Amendment, stating that defendant Fleming "has engaged several attorneys…to conspire against their client Brian Waterman as well as Conard and Coleman." (Doc. 46, p. 20).

### Screening standards

A federal court must conduct a preliminary review of any case in which a prisoner seeks relief against a governmental entity or an officer or employee of such an entity. *See* 28 U.S.C. §1915A(a). Following this review, the court must dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from that relief. *See* 28 U.S.C. § 1915A(b).

In screening, a court liberally construes pleadings filed by a party proceeding pro se and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To avoid a dismissal for failure to state a claim, a complaint must set out factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts the well-pleaded allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Id*. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the matter should be dismissed. *Id*. at 558. A court need not accept "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "to state a claim in federal

court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Tenth Circuit has observed that the U.S. Supreme Court's decisions in *Twombly* and *Erickson* set out a new standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii). *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted). Following those decisions, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (quotation marks and internal citations omitted). A plaintiff "must nudge his claims across the line from conceivable to plausible." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In this context, "plausible" refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)(citing *Twombly*, 550 U.S. at 1974).

### Discussion

The court has considered the complaint and will direct plaintiff to show cause why defendants Hazlett, Baird, Schmidt, and the State of Kansas should not be dismissed from this action.

Plaintiff's claims against defendants Hazlett and Baird, employed at the Kansas Office of the Disciplinary Administrator, concern their decisions made in processing plaintiff's claims

against prosecutors and other attorneys (Doc. 46, pp. 18-19). Plaintiff appears to seek redress from the decisions, and as injunctive relief, he asks that the court order the disciplinary administrator to "investigate nonfrivolous complaints" (Doc. 46, p. 6).

This claim does not allege the violation of a constitutional right, and the court does not oversee the actions of the state disciplinary administrator's office or review its decisions. Therefore, the claim is subject to dismissal.

Likewise, the plaintiff's allegation against defendant Schmidt, the Kansas Attorney General, appears to assert that he has taken no action after plaintiff sent letters to his office in 2019 and 2020 concerning allegedly unlawful discovery practices. Plaintiff does not allege how his constitutional rights were violated by the failure of the defendant to take action on those letters, and the court finds no claim for relief is stated.

Plaintiff's claim against the State of Kansas is unclear. In parts of the complaint, he appears to substitute the State of Kansas for the prosecutor in his criminal case, such as his statement, "Lowry allowed the State of Kansas and encouraged the State of Kansas to intrude into the attorney-client relationship." (Doc. 46, p. 8). If such allegations are construed as claims for monetary damages from the State, the claims fail. The State of Kansas is not a "person" that is amenable to suit for damages under § 1983. *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). In addition, the State of Kansas is

absolutely immune to suit for money damages under the Eleventh Amendment. While plaintiff may seek declaratory or injunctive relief by bringing suit against state officials acting in official capacities, he does not appear to seek such relief. The request for relief identified in the complaint seeks monetary damages, asks that the Disciplinary Administrator investigate his complaints, asks that the Cherokee County Jail be prohibited from intruding into the attorney-client relationship, and requests access to legal work in segregation (Doc. 46, p. 6). The court finds no ground to allow plaintiff to proceed against the State of Kansas.

### Motion to fix the law library

Plaintiff filed a "motion to fix the law library again and to stop taking it away" (Doc. 42). He claims that in 2018, defendants took the search engine away for two years, and that in January and February 2021, they took the law library away during pretrial. He states the defendants now have disabled the keyboard, which disables access to the law library.

As a pretrial detainee, plaintiff is "entitled to meaningful, but not total or unlimited access to the courts." *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1107 (10th Cir. 2005). To state a claim for relief, plaintiff "must demonstrate actual injury from interference with his access to the courts" by showing that defendants "frustrated or impeded his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)(citing *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal

claim." *Lewis*, 518 U.S. at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id*. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. (emphasis in original); *see also Carper v. Deland*, 54 F.3d 613, 617 (10th Cir. 1995)("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.")(citations omitted).

Plaintiff has not alleged that he was prevented from accessing the courts or that he suffered an actual injury due to the limitations on the use of the law library. If he believes he has a claim concerning the denial of access to the court, he should file an action after exhausting the facility's grievance procedures. Plaintiff's motion is denied.

### Motion for protection from abuse

Plaintiff also has filed a motion for protection from abuse from the undersigned as well as against other judges sitting on this court. He requests that a "neutral judge" investigate his judicial misconduct complaints as well as any orders entered after the complaints were filed. Plaintiff complains about being denied the appointment of counsel and presents arguments about the merits of the cases he has pending in the District of Kansas. He alleges that the undersigned is intentionally dismissing all of his § 1983 cases.

Plaintiff seeks "protection from abuse" or "at the very minimum"

to have the undersigned recuse from all of his cases. The court construes his motion as seeking recusal based on adverse rulings. The Supreme Court has explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). When no extrajudicial source is relied upon as a ground for recusal, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

Plaintiff's bare claims are insufficient to meet this standard, and the court therefore will deny the motion for protection.

### Motion for writ

In this motion, plaintiff asks that the court order a writ of mandamus directing the Kansas disciplinary administrator to investigate his complaints against defendants Conard, Coleman, Lowry, and Beezley.

The federal courts do not have jurisdiction to issue the writ of mandamus to state officers. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."); *Amisub (PSL), Inc. v. Colo. Dept. of Soc. Servs.,* 879 F.2d 789, 790 (10th Cir.1989) ("No relief against state officials or state agencies is afforded by § 1361.").

Plaintiff's motion must be denied.

### Motion to stay/Motion to continue

```
                              S/ Sam A. Crow

                              SAM A. CROW
                              U.S. Senior District Judge
```